**IN SUPPORT OF CRIMINAL COMPLAINT**

I, Derek De St Jean, being duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent ("SA") with the Federal Bureau of Investigation and have been so employed in that capacity since July 2019. Through my training and experience, I have become familiar with the tools used in the investigation of such violations, including undercover operations, surveillance, evidence collection, and conducting interviews of witnesses, informants, and others with knowledge of the offense. I have participated in the execution of multiple federal search warrants. In addition, I have consulted with FBI Special Agents and other members of the Joint Terrorism Task Force (JTTF) in the preparation of this affidavit. These individuals have received training in the preparation, presentation, and the service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses against the United States, including crimes involving possession of firearms by prohibited persons and providing material support or resources to designated foreign terrorist organization.

2.  I make this affidavit in support of an application for a complaint and arrest warrant for Moctar Ahmadou Gouroudja Ahmadou, a 23-year old male, for violations of **18 U.S.C. § 922(g)(5)(B)** (Possession of a Firearm by a Prohibited Person). This affidavit does not include all facts known to me, but rather contains facts sufficient to support the issuance of an arrest warrant.

3.  Title 18 U.S.C. §922(g)(5)(B) states: It shall be unlawful for any person who, being an alien, except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa, to ship or transport in interstate or foreign commerce, or possess in

or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. Subsection (y)(2) provides an exception for aliens under nonimmigrant visas who are admitted to the United States for lawful hunting or sporting purposes or who are in possession of a hunting license or permit lawfully issued in the United States, which **AHMADOU** does not possess.

## STATEMENT OF FACTS

4. The United States, including the FBI, is conducting a criminal investigation of **Moctar Ahmadou Gouroudja Ahmadou ("AHMADOU"),** a 23 year-old citizen and national of Niger, present in the United States on a nonimmigrant visa, for possession of a firearm by a prohibited person. Through the logical course of the investigation, it was discovered that **AHMADOU** has been in direct and indirect contact with others who share a radical mindset, has been conducting physical training, and has trained with weapons to in order possibly commit an attack.

### Subject's Immigration History

5. **AHMADOU** entered the United States on March 24, 2016, from Niger, under a nonimmigrant F1 visa, commonly referred to as a student visa, to study at the North American University in Stafford, Texas. **AHMADOU** completed his course of study in or about December 2020 earning a degree in business. Once **AHAMDOU** completed his studies and graduated, he began Optional Practical Training (OPT) which allows him to work in a field related to his studies for up to a year. Subsequently, **AHMADOU** was issued an Employment Authorization Document (EAD), allowing him to maintain his immigration status and work in OPT until on or about April 18, 2022. At no time has **AHMADOU's** status allowed him to possess or use firearms or ammunition.

### SUBJECT's Firearms Experience

6. According to records obtained from a gun range in the Houston area and **AHMADOU's** statement in paragraph 8, he attended a 30-minute beginner-level shooting class during a February 2019 visit to the same firearms range described below. Specifically, financial records from the below described gun range indicate that **AHMADOU** partially paid for a firearm rental, ammunition, and a shooting lane on his credit card in February 2019.

### SUBJECT's Conversations about Physical Training and Weapons Training

7. Between approximately May 14, 2021 and May 21, 2021, **AHMADOU** had multiple recorded conversations[1] with an individual acting on behalf of an FBI Confidential Human Source (CHS 1)[2] discussing "jihad," (meaning, based on my training and experience, a violent act), physical training, and weapons training. These conversations were in a combination of Arabic and English; neither the CHS nor **AHMADOU** are native speakers of these languages. On or around May 14, 2021, **AHMADOU** and CHS 1 discussed the Israeli and Palestinian conflict. **AHMADOU** stated that anyone can go to Palestine and that he is thinking about traveling there. **AHMADOU** asked CHS 1 about "'Jihad fi sabeel Allah" [Jihad for the sake of Allah]. **AHMADOU** continued to tell CHS 1, "And I am telling you, yes, God willing. I am ready. And I am thinking about the program with…you know…[UI] the program, you know…that I know, only one, you know…" CHS 1 stated, "The gun." **AHMADOU** replied, "Yes." **AHMADOU** continued to state that pain for the sake of Allah is paradise. Furthermore, **AHMADOU** told CHS 1 that in one day he shot [a weapon] ten times and

---

[1] The quoted statements are from the recorded conversations between Ahmadou and CHS 1. An FBI linguist provided translated summaries of the conversations. The conversations are not verbatim.

[2] The CHS has been paid for services rendered, has a criminal record, and your Affiant thinks the CHS could be hoping for assistance with immigration issues.

continued to ask about purchasing weapons in the United States and all the regulations, exams, and paperwork that it entails. **AHMADOU** went on to state that he is interested in taking training courses on weapons. **AHMADOU** showed CHS 1 a photo of a weapon and said he is thinking about the weapons that are available here. CHS 1 asked **AHMADOU** to send him the name of the weapon. CHS 1 stated that they have a piece of paper and asked **AHMADOU** to write the name of the weapon. **AHAMDOU** said aloud as he wrote, "A, K, 47." **AHMADOU** repeated the number in Arabic to CHS 1.

8. On or around May 16, 2021, **AHMADOU** stated to CHS 1 that he went to a training site [gun range] one time in the past. **AHMADOU** added, "they ask for the I.D., they ask, and they know. There are cameras and everything." **AHMADOU** elaborated, "in the past, here in America, one Muslim man and one woman, they undertook jihad for the sake of Allah, but before jihad, they went to a similar school.[3]" **AHMADOU** explained that in the past that he went to that same "academy" and took one lesson on using a small gun. **AHMADOU** explained to CHS 1 what he learned. **AHMADOU** preferred to go to the same school he went to before because they already know him. If he goes to a different school, they will ask for his I.D. **AHMADOU** discussed with CHS 1 about committing violent jihad:

> *"... the mujahidin scholars say that for these suicidal operations and the like, we need the call from the Emir, yes. Before anything, you know...and I do not know even one emir ... I don't know them. Now I think about that and I also think, okay, there is no emir ...if I still ... if we still do something about it here ... I cannot do*

---

[3] Based on open source information, on or about December 2, 2015, approximately 14 people were killed and 22 people were wounded when Syed Rizwan Farook (Farook) and Tashfeen Malik, a married couple, conducted a mass shooting at the Inland Regional Center in San Bernardine, California. According to open sources, Farook practiced at a gun range two days before the shooting.

> *anything about it here… only Israel and Palestine … but, Allah knows best, I think, that if I or any Muslim go there and do something, maybe, maybe it will be a big problem, Allah knows best. However, if there is a benefit to it, then there is no problem at all. No problem at all if there is benefit in it…. You ask me if I am ready. I am thinking about…"*

**AHMADOU** further stated,

> *"So he [Anwar al-Awlaqi[4]] says 'how to send one man with a weapon without knowing how to use the weapon?' and I was laughing at myself thinking 'now, am I ready?' So I thought and thought and I said I need training now. Yes. So I am thinking about that and I have a plan for a workout at home. Running …. And there is equipment…. But the problem with this, is I am thinking … okay … so I will do training … for one to three months, and I will spend many hours and days [in training]. I don't know if with or without training I go to…you know."*

9. On or around May 17, 2021, CHS 1 and **AHMADOU** talked about guns. **AHMADOU** told CHS 1 which lessons they have to take first. **AHMADOU** said the first lesson has to be on a gun then later on a machine gun. **AHMADOU** said they can train that day as much as they can and continue the following day. They taught each other the words "handgun, rifle and shotgun" in English and Arabic. **AHMADOU** commented that the Kalashnikov is different from others. Furthermore, **AHMADOU** stated to CHS 1 about participating at the gun range, "there is no problem with us or any Muslim. That is not the problem. The problem will be with *special training*, *special operation*. That will be a

---

[4] Based on open source information, Anwar al-Awlaki was an American Islamic preacher and al-Qaeda terrorist kill by a U.S. drone attack. al-Awlaki was directly linked to multiple terrorism plots in the United States and United Kingdom, including an attempt in December 2009 to blow up a jetliner bound for Detroit.

problem…" Towards the end of their conversation, **AHMADOU** stated, "…that the reward will be jihad for the sake of Allah."

### Visit to the Gun Range – May 17, 2021

10. On or around May 17, 2021, **AHMADOU** participated in renting, handling, and firing a handgun at a Texas based gun range. According to Employee #1 and Employee #3, **AHMADOU** was "eager" to learn how to shoot pistols and rifles. **AHMADOU** purchased a course referred to as "First Shot" which provided approximately 15 minutes of instructional training on pistol shooting and approximately 20-30 minutes of range time. As part of the "FIRST SHOTS" course, a firearm rental and 10 rounds of ammunition are provided to each participant.

11. After completing the First Shot course, **AHMADOU** rented a Glock model 45 and purchased ammunition which **AHMADOU** paid for in cash. The Glock model 45 9 mm, serial number BSBL541, was manufactured outside of the states of Texas and therefore was shipped or transported in interstate or foreign commerce.





12. On May 17, 2021, Employee #2 provided the gun range's electronic waiver of liability and acknowledgement of range rules signed by **AHMADOU**. This form was not prepared by the federal government, nor is it a document required to be made or kept by the federal government. As part of the gun range's waiver form, it contained a "definition of 'Prohibited Person' as defined by The Gun Control Act of 1968 and codified at 18 USC 922" statement. **AHMADOU** checked a box in this section of the waiver stating, "I understand the definition of a 'Prohibited Person' as it pertains to possession of a firearm and swear and attest that I am in compliance with both federal and Texas State Law." The definition of a prohibited person provided by the gun range as part of this form is not a complete recitation of 18 U.S.C. § 922(g), it specifically omitted section 922(g)(5)(B), the section charged in this criminal complaint. The form is set out below.

> **Definition of 'Prohibited Person' as defined by The Gun Control Act of 1968 and codified at 18 USC 922**
>
> "Prohibited Person" Defined: The Gun Control Act (GCA), codified at 18 U.S.C. § 922(g), prohibits the possession of a firearm by anyone...
>
> - convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
> - that is a fugitive from justice;
> - unlawfully using or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act, codified at 21 U.S.C. § 802);
> - adjudicated as a mental defective or has been committed to any mental institution;
> - an illegal alien;
> - who has been discharged from the Armed Forces under dishonorable conditions;
> - that has renounced his or her United States citizenship;
> - subject to a court order restraining the person from harassing, stalking, or threatening an intimate partner or child of the intimate partner; or convicted of a misdemeanor crime of domestic violence.
>
> Certification of Understanding and Statement of Compliance *
>
> ☑ I understand the definition of a "Prohibited Person" as it pertains to possession of a firearm and swear and attest that I am in compliance with both federal and Texas State Law.
>
> Certification of Emotional and Physical Health *
>
> ☑ I AM NOT now nor have I recently been depressed, had feelings or thoughts of suicide or suffer from any form of Post-Traumatic Stress Syndrome that may be cause for concern for your use of a firearm? I understand that it is my responsibility to notify Texas Gun Club if this changes.

13. **AHMADOU** was observed on the firing line at the gun range holding a pistol and shooting down range towards a target.

 



14.     After completing his time on the range, **AHMADOU** expressed an interest to take a rifle course as early as May 18, 2021. The course is given privately on a one-on-one basis or in a private group. **AHMADOU** expressed an interest to bring along another individual for the rifle training. **AHMADOU** requested for each participant of the course to have their own instructor as a one-on-one ratio.

### Visit to the Gun Range – May 18, 2021

15.     On May 18, 2021, **AHMADOU** returned to the same gun range to participate in handling and firing a rifle. Employee #4 instructed the Rifle 101 course which was provided to **AHMADOU**. The course consisted of firearms safety, manipulation, and shooting a rifle. The first half of the course was conducted in a classroom and the second half was the shooting portion, which was held on the firing range.

16.     **AHMADOU** expressed a desired to take additional courses and inquired what other courses were offered at the gun club. Employee #4 informed **AHMADOU** that the range had three levels of classes titled: 101, 201 and 301. The 101 course was the class **AHMADOU** took that day, the 201 consisted of firearm manipulation and the 301 consisted of range movement. Specifically, in the 301 course, the student learned how to shoot on the move. **AHMADOU** was extremely interested in taking the 301-level course. Employee #4 stated his

schedule was completely booked for the next three weeks but could contact Employee #4 via email in order to schedule the additional training. Furthermore, after **AHMADOU** completed the Rifle 101 course, he asked Employee #5 if the range held Sniper training courses. Employee #5binformed **AHMADOU** there were not any such courses at the range.

17. After **AHMADOU's** time at the gun range, Employee #5 provided the weapon to **AHMADOU** which he possessed and shot, which was a Smith & Wesson MP15 AR-15 rifle, serial number TS09452, which was manufactured outside of the states of Texas and therefore was shipped or transported in interstate or foreign commerce.





18. Employee #1 provided the receipt for the purchases **AHMADOU** made that day,

which he paid in cash. The receipt shows the purchase of the Rifle 101 class and four boxes of Fiocchi .223 caliber ammunition which was manufactured outside of the states of Texas and therefore was shipped or transported in interstate or foreign commerce.

19. It should be noted that **AHMADOU** continued to meet with the CHS and, indeed, met with other sources as well; he remains fervent in his support for violent jihad but has not committed to any definite course of action.

## CONCLUSION

20. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that Moctar Ahmadou Gouroudja Ahmadou violated **18 U.S.C. § 922(g)(5)(B)** (Possession of a Firearm by a Prohibited Person) as detailed above.

DEREK DE ST JEAN
Federal Bureau of Investigation
Special Agent
Houston, Texas

Subscribed and sworn to TELEPHONICALLY on this 22nd day of July 2021, at, Houston, Texas, and I find probable cause.

Hon. CHRISTINA A. BRYAN
U.S. MAGISTRATE JUDGE